**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-80217-Cr-RYSAKAMP**

**UNITED STATES OF AMERICA,**

**vs.**

**JOHN SKEFFINGTON,**

**Defendant.**
_______________________________/

# PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and John Skeffington (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Counts 8 and 17 of the Indictment, which charge him with mail fraud, in violation of Title 18, United States Code, Section 1341.

2. This Office agrees to seek dismissal of Counts 1 - 7, 9 - 16, and 18 - 21 of the Indictment after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider

the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that, as to each count, the Court may impose a statutory maximum term of imprisonment of up to twenty years, followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater, and must order restitution. The defendant agrees to pay $537,556.92 restitution to the victims of this offense.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $200 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's

background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make this motion and this recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct and the defendant's financial status; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

a. Base Offense Level: That the base offense level is seven, pursuant to Section 2B1.1(a)(1);

b. Loss: That the relevant amount of actual, probable or intended loss resulting from the offense is more than $400,000, but not more than $1 million, which results in an fourteen level enhancement, pursuant to Section 2B1.1(b)(1)(H) of the Sentencing Guidelines; and

c. Number of Victims: That the offense involved 10 or more victims, which results in a two-level enhancement, pursuant to Section 2B1.1(B)(2)(A).

9. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that

the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the defendant's waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

10. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

13. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/26/13

By: ______________________
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

I have read and carefully reviewed every part of this Agreement with my attorney, LAtree Gray, and voluntarily agree to its terms. No one has threatened or coerced me in any way into entering into this Agreement.

Date: 11-8-12

JOHN SKEFFINGTON
DEFENDANT

I, LAtree Gray, am the attorney for John Skeffington. I have explained to him the terms and conditions set forth above and are satisfied that he understands and agrees to them.

Date: 11-13-12

, ESQ.
ATTORNEY FOR DEFENDANT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-80217-Cr-RYSAKAMP**

**UNITED STATES OF AMERICA,**

**vs.**

**JOHN SKEFFINGTON,**

**Defendant.**
______________________________/

**FACTUAL BASIS IN SUPPORT OF GUILTY PLEA**

If this case had proceeded to trial, the Government would have established beyond a reasonable doubt that defendant John Skeffington did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, well knowing that the pretenses, representations and promises would be and were false and fraudulent when made, and for the purpose of executing said scheme did knowingly cause to be delivered by the United States Postal Service certain mail matter according to the directions thereon.

The elements for mail fraud are as follows:

First: That the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false of fraudulent pretenses, representations, or promises;

Second: That the false or fraudulent pretenses, representations, or promises were about a material fact;

Third: That the defendant acted with intent to defraud; and

Fourth: That the defendant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud.

To prove that the defendant committed the offenses charged in the Indictment, the Government would establish beyond a reasonable doubt the following evidence:

In February 2007, defendant John Skeffington and his wife obtained a $1.4 million loan from Liberty Bank in Highland,, Arkansas, to purchase and develop 880 acres of undeveloped property known as Deer Run and Mountain Valley Lakes, located in Sharp County, in the Eastern District of Arkansas. The defendant claimed he was going to subdivide the property and offer the lots for sale. According to the terms of his bank loan, the defendant was not permitted to sell any of the lots until he had paid the bank a specified amount of money to release the mortgage on those lots.

In April 2007, the defendant, doing business as Arkansas Lakes, LLC, began marketing the lots for sale within the United States and internationally. The defendant represented that he was selling the lots free from all encumbrances and would provide the buyers with warranty deeds. However, the defendant had not repaid the bank for any of the lots, as required by the terms of the loan agreement, and therefore had not obtained the release of mortgages. Nonetheless, between April 2007 and March 2009, the defendant sold numerous lots, representing that they were free from all encumbrances, when, in fact, they were still subject to the mortgages. To conceal the fact that the lots were not free from all encumbrances, the defendant caused false warranty deeds to be prepared for the purchasers, which deeds falsely represented that the defendant had clear title to the lots, that he had full rights to convey them, and that the lot were free from all encumbrances. The defendant signed the false and fraudulent deeds, which were notarized by an Arkansas Lakes employee, and then caused them to be sent from Arkansas Lakes, LLC, in Florida, to the Sharp County Clerk's office in Sharp County Arkansas, where they were recorded and stamped and then mailed by the United States Postal Service to the defendant's office in Florida.

During the course of the scheme, which spanned from April 2007 through March 2009, the defendant sold a total of 238 lots to 47 buyers located in Arkansas, Florida, the United Kingdom and elsewhere, collecting a total $465,000. In each instance, the defendant had falsely represented that the lots were free from all encumbrances, when in fact they were not. For the purpose of executing the scheme, on the dates set forth in Counts 8 and 17 of the Indictment, in the Eastern District of Arkansas, and elsewhere, the defendant caused the United States Postal Service to deliver according to the addresses thereon the false and fraudulent warranty deeds set forth for those counts.

Wifredo A. Ferrer
United States Attorney

By: ______________________ 2/28/13
Adrienne Rabinowitz Date
Assistant United States Attorney

I have read and reviewed with my attorney the above statement of facts and stipulate that the facts are true and correct.

John Skeffington
Defendant

2/28/13
Date

Samuel Smargon
Counsel for Defendant

2/28/13
Date